UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                 Case Number 10-20392

v.                                               Honorable David M. Lawson

HUSSEIN NAZZAL,

        Defendant.

_____/

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**

Before the Court is defendant Hussein Nazzal's second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Because the relevant factors favor Nazzal's position, the Court will grant the motion.

I.

Following a jury trial, defendant Hussein Nazzal and his co-defendant (and former attorney) Edward Schneider were convicted on multiple charges of bank fraud, bribery, and creating false records. The convictions were based on Nazzal's orchestration of a "loan jumping" and mortgage fraud scheme over the course of several years involving numerous commercial loan transactions. On December 2, 2013, the Court imposed a below-guidelines sentence of 110 months in prison and ordered him to repay more than $1.9 million in restitution. The convictions and sentence were affirmed on appeal. *United States v. Nazzal*, 607 F. App'x 451 (6th Cir. 2015).

On September 9, 2016, Nazzal filed a motion to vacate his sentence under 28 U.S.C. § 2255, in which he argued that his trial counsel was ineffective by failing to investigate potential witnesses, coming unprepared for trial and presenting no defense, "coercing" him not to testify, and failing to file a brief in support of a mid-trial motion for judgment of acquittal on one charge. The Court denied the motion to vacate on September 26, 2019. The defendant did not appeal.

On February 13, 2014, Nazzal surrendered to the custody of the Bureau of Prisons at the Milan Federal Correctional Institution in Milan, Michigan, where he presently resides. To date he has served nearly 76 months or 69% of his custodial sentence. Public records from the Bureau of Prisons indicate that he is scheduled to be released on November 27, 2021. He has paid about half of his restitution.

On May 6, 2020, the defendant filed a request for compassionate release with the warden of the prison. In his motion he stated that the warden had not responded to that request. However, in its response, the government disclosed that the request was denied by the warden on May 18, 2020. On May 13, 2020, Nazzal filed a motion for compassionate release in which he asked the Court to reduce his sentence to time served in custody with the remainder of his prison term to be served under supervised release on home confinement. Although the case was filed before the 30-day waiting period had run, the warden subsequently rejected Nazzal's request for compassionate release. However, the Sixth Circuit held in the interim that exhaustion of administrative remedies is a mandatory case-processing rule that must be enforced. *United States v. Alam*, --- F.3d ---, No. 20-1298, 2020 WL 2845692, at *3 (6th Cir. June 2, 2020). Because Nazzal did not pursue administrative remedies or wait 30 days from the date he submitted his request to the warden, and the government asserted that affirmative defense, the Court denied Nazzal's motion without prejudice.

Nazzal filed his second motion for compassionate release on June 8, 2020, well after the 30-day period lapsed. Once again, he argues that release to home confinement is warranted due to the acute risk to his health posed by the novel coronavirus, because of risk factors that include his age (65), history of heart disease, including pre-incarceration catheterization, severe asthma, benign prostate cancer, and high blood pressure.

On February 13, 2014, Nazzal surrendered to the custody of the Bureau of Prisons at the Milan Federal Correctional Institution in Milan, Michigan, where he presently resides. To date he has served nearly 76 months or 69% of his custodial sentence. Public records from the Bureau of Prisons indicate that he is scheduled to be released on November 27, 2021. He has paid about half of his restitution.

On May 6, 2020, the defendant filed a request for compassionate release with the warden of the prison. In his motion he stated that the warden had not responded to that request. However, in its response, the government disclosed that the request was denied by the warden on May 18, 2020. On May 13, 2020, Nazzal filed a motion for compassionate release in which he asked the Court to reduce his sentence to time served in custody with the remainder of his prison term to be served under supervised release on home confinement. Although the case was filed before the 30-day waiting period had run, the warden subsequently rejected Nazzal's request for compassionate release. However, the Sixth Circuit held in the interim that exhaustion of administrative remedies is a mandatory case-processing rule that must be enforced. *United States v. Alam*, --- F.3d ---, No. 20-1298, 2020 WL 2845692, at *3 (6th Cir. June 2, 2020). Because Nazzal did not pursue administrative remedies or wait 30 days from the date he submitted his request to the warden, and the government asserted that affirmative defense, the Court denied Nazzal's motion without prejudice.

Nazzal filed his second motion for compassionate release on June 8, 2020, well after the 30-day period lapsed. Once again, he argues that release to home confinement is warranted due to the acute risk to his health posed by the novel coronavirus, because of risk factors that include his age (65), history of heart disease, including pre-incarceration catheterization, severe asthma, benign prostate cancer, and high blood pressure.

On June 8, 2020, the Court received the latest report from prison authorities at FCI Milan about the status of the coronavirus outbreak there. According to that report, 78 inmates have tested positive for COVID-19, three have died, and eight are "pending recovery." The report also indicates that 55 staff have tested positive, 54 have recovered and returned to work, and one is pending recovery. The report does not disclose how many staff or inmates have been tested.

The government no longer asserts its exhaustion defense. It again attempts to minimize some of the risk factors posed by the defendant's medical condition, but it essentially concedes that he is at high risk where it represents that on April 15, 2010, he was designated to a special housing unit within FCI Milan reserved for inmates at high risk from the pandemic. According to the government, the procedures in the special housing unit, which are described in its motion response as follows, have substantially mitigated or eliminated the risk to his health:

> In mid-April 2020, inmates at FCI Milan who were identified as being potentially at risk for COVID-19 by Health Services were assigned to live in C Unit. The entire purpose of C-Unit is to mitigate possible exposure for these at risk inmates. Nazzal has been housed in C-Unit since April 15, 2020. Orderlies work daily to maintain a high state of sanitation inside of C-Unit. Nazzal volunteered to be an orderly, and in fact, is the head orderly for all of C-Unit. C-Unit is comprised of single and double cells. Nazzal is housed in a double cell, and his cellmate is also a C-Unit orderly.
>
> In C-Unit, all meals are served directly to the inmate, in his assigned cell, by a staff member wearing proper PPE. Out of cell time is limited. Three cells at a time (at most, 6 inmates) are permitted out of cell for a period of 30 minutes. During their out of cell time, inmates can use the phone, email, shower or watch television.
>
> At the end of 30 minutes, the inmates return to their C-Unit cell assignments. During their out of cell time, inmates must maintain a physical distancing of at least 6 feet and must wear their cloth face mask at all times.

Govt Resp., ECF No. 285, PageID.5221-22. The government finally argues that Nazzal is not an appropriate candidate for release based on the severity of his crimes, which involved systematic fraud over a period of years.

II.

Ordinarily, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). There are exceptions, and one is found in the First Step Act, Pub. L. No. 115-391, which became law in December 2018. As relevant here, the First Step Act modified "the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007." *United States v. James*, No. 15-255, 2020 WL 1922568, at *1 (D. Minn. Apr. 21, 2020) (citing 18 U.S.C. § 3624(c)(1)). That Act authorizes the BOP to place low risk prisoners in home confinement for the last six months (or ten percent, if a shorter term) of their sentence.

On April 3, 2020, the Attorney General exercised emergency authority under section 12003(b)(2) of the CARES Act, Pub. L. No. 116-136, to expand the group of inmates who may be considered for home confinement because of the emergency conditions caused by the COVID-19 virus and its effect on prison populations. Under that guidance, "[t]he BOP began reviewing all inmates who have COVID-19 risk factors, starting with inmates incarcerated at prisons that have experienced COVID-19 cases, (including . . . FCI-Elkton) and similarly-situated facilities to determine which inmates are suitable candidates for home confinement." *Ibid.*

The FSA also allows a court to reduce the term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that a reduction is consistent with applicable statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). This so-called "compassionate release" provision allows a court to reduce a prison term "if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). But that action must await a "motion of the Director of the Bureau

of Prisons," or a "motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Ibid.*

Nazzal has expressed fear of being infected with the novel coronavirus, and justifiably so. The virus causes a respiratory disease that can result in serious illness or death. It is a new strain of coronavirus not previously identified in humans, and it easily spreads from person to person. There is currently no approved vaccine or antiviral treatment for the disease, known as COVID-19. Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, estimated that between 100,000 and 240,000 people in the United States will die from COVID-19-related complications. Michael D. Shear *et al.*, Coronavirus May Kill 100,000 to 240,000 in U.S. Despite Actions, Officials Say, N.Y. Times, Mar. 31, 2020, https://www.nytimes.com/2020/03/31/us/politics/coronavirus-death-toll-united-states.html.

The Centers for Disease Control and Prevention (CDC) have advised that "[p]eople aged 65 years and older" may be at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (Mar. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The CDC also has identified persons with certain medical conditions as being at high risk, including those with diabetes, "serious heart conditions," and "[p]eople with . . . moderate to severe asthma." *Ibid.*

On March 23, 2020, the CDC issued further guidance acknowledging that detention facilities "present [] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." Interim Guidance on Management of

Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. "The CDC noted that many detention conditions create a heightened risk [for] detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing)." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020).

The common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are either (1) properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or (2) in cases with unexhausted claims, where the defendants had severe medical conditions which placed them at high risk of coronavirus infection, were housed at a facility with confirmed cases, and had served a large majority of their sentences. *E.g.*, *United States v. Readus*, No. 16-20827, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (ordering compassionate release of 33-year-old inmate with severe obesity, severe obstructive sleep apnea, hypertension, and "prediabetes"); *United States v. Sawicz*, No. 08-287, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (granting compassionate release of defendant with hypertension who was housed at a facility where COVID-19 cases were reported, with only five more months to serve before being eligible for home confinement); *United States v. Rodriguez*, No. 03-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) (granting compassionate release to inmate who had served 17 years on a 20-year sentence, had health issues including Type 2 diabetes, essential hypertension, obesity, and liver abnormalities, and was housed at a facility with

confirmed cases of COVID-19); *United States v. Coker*, No. 14-085, 2020 WL 1877800 (E.D. Tenn. Apr. 15, 2020) (ordering compassionate release of a defendant who was wheelchair bound with severe terminal chronic obstructive pulmonary disease that required oxygen therapy, which the BOP admittedly could not provide); *United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (ordering compassionate release of inmate at FCI Milan who had served 33 months of a 72-month sentence for a non-violent drug offense, was 71 years old, and suffered from medical conditions including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, back problems, a frozen thigh from an overdose of coumadin given by prison officials, and who also had a history of heart surgery and knee replacement, and a recent diagnosis of kidney cancer).

All of the pertinent factors favor granting compassionate release in this case. The government rather anemically disputes the seriousness of Nazzal's health conditions, but it essentially admitted that he was at high risk when it assigned him to the special housing unit. Moreover, it is beyond dispute that the defendant's age places him at serious risk according to the CDC guidelines, and his risk is aggravated by other serious conditions including a history of heart disease, essential hypertension, type 2 diabetes, and asthma from which he evidently suffers daily and for which he takes medication. *See* Medical Record report dated Mar. 5, 2020, ECF No. 288, PageID.5249. The defendant's age, coronary disease, diabetes, and asthma have been recognized by the CDC as serious risk factors for complications from coronavirus infection. His prison disciplinary record indicates only one minor incident from four years ago. Prison Disciplinary Report dated May 13, 2020, ECF No. 285, PageID.5239. And the defendant already has served most of his custodial sentence on convictions for non-violent fraud offenses.

Despite the government's attempt to minimize the status of the pandemic crisis at FCI Milan, it is undisputed that the progress of the outbreak is ongoing, and the facility still has active inmate infections. *United States v. Alzand*, No. 18-20703, 2020 WL 2781824, at *1 (E.D. Mich. May 29, 2020) ("As of May 26, 2020, seventy-two inmates at FCI Milan have tested positive for COVID-19, three have died, and there are five active cases. Among the staff at FCI Milan, fifty-five have tested positive for COVID-19 and three are pending recovery."). As Judge Tarnow recently observed, "the persuasive precedent for granting compassionate release under the current circumstances is overwhelming," particularly for inmates with serious risk factors such as age, diabetes, hypertension, and heart disease, and whose prison disciplinary record suggests a low risk of recidivism and no danger to the community. *United States v. Harrell*, No. 13-20198, 2020 WL 2768883, at *2 (E.D. Mich. May 28, 2020) (collecting cases).

Finally, it is worth noting that the government has not produced any credible information to place the number of detected infections at FCI Milan into context, e.g., by disclosing the number of tests performed to date, or convincingly to demonstrate that the outbreak has abated, notwithstanding the precautions that it has taken to isolate some at risk inmates.

III.

The defendant has established that he is at serious risk in a facility with known infections of COVID-19, and all of the other pertinent factors also weigh favor of his release.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 291) is **GRANTED**.

It is further **ORDERED** that the defendant's the term of custody is **REDUCED** to time served. Upon release, the defendant must self-quarantine for a period of two weeks. Thereafter, his term of supervised release shall include a condition requiring him to be placed under home

confinement for a period equal to the balance of his now-pretermitted custody term.  The Court will enter an amended judgment and commitment.

                                                          s/David M. Lawson  
                                                          DAVID M. LAWSON  
                                                          United States District Judge

Dated:   June 10, 2020